UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

United States of America

        Plaintiff,

v.   Criminal No. 10-5(2) (JNE/SRN)
   Civil No. 12-1914 (JNE)
   ORDER

David West Dixon,

        Defendant.

This matter is before the Court on Defendant David Dixon's pro se motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. Dixon raises claims of prosecutorial misconduct and ineffective assistance of counsel. For the following reasons, the Court denies Dixon's motion without an evidentiary hearing.

## I.    BACKGROUND

A jury convicted Dixon on June 3, 2010, on one count of aiding and abetting bank robbery in violation of 18 U.S.C. §§ 2, 2113(a). On November 22, 2010, the Court sentenced Dixon to 220 months' imprisonment. Dixon appealed his conviction and sentence, and the Eighth Circuit affirmed on August 15, 2011. *United States v. Dixon*, 650 F.3d 1080 (8th Cir. 2011). Dixon filed the present motion for post-conviction relief on August 3, 2012 and supplemented his motion on November 01, 2012.[1]

---

[1] A § 2255 motion must be filed within one year from "the date on which the judgment of conviction becomes final." 28 U.S.C. § 2255(f)(1). The Eighth Circuit's judgment became final 90 days after entry of judgment—when the time for filing a petition for writ of certiorari expired. *Clay v. United States*, 537 U.S. 522, 527 (2003); Sup. Ct. R. 13. Dixon filed and supplemented his § 2255 motion within the one-year timeframe.

1

## II. DISCUSSION

A prisoner whose "sentence was imposed in violation of the Constitution or laws of the United States" may under 28 U.S.C. § 2255 "move the court which imposed the sentence to vacate, set aside, or correct the sentence." "A prisoner is entitled to an evidentiary hearing on a section 2255 motion unless the motion, files and records of the case conclusively show that the prisoner is not entitled to relief." *Engelen v. United States*, 68 F.3d 238, 240 (8th Cir. 1995). "Accordingly, a petition can be dismissed without a hearing if (1) the petitioner's allegations, accepted as true, would not entitle the petitioner to relief, or (2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Id.* The Court will first address Dixon's claim of prosecutorial misconduct and then will discuss Dixon's multiple claims of ineffective assistance of counsel.

### A. Prosecutorial Misconduct

Dixon argues that the prosecutor committed "prosecutorial misconduct by withholding the Grand Jury testimony of government witness Lt. Michael Fossum from the defense in a possible *Brady* violation." (Dkt. 120 at 15.) However, Dixon could have raised this issue on direct appeal and failed to do so. "[A] claim unraised on direct appeal is procedurally defaulted unless a petitioner can demonstrate (1) cause for the default and actual prejudice or (2) actual innocence." *United States v. Moss*, 252 F.3d 993, 1001 (8th Cir. 2001). Dixon has not alleged or shown cause for his default, so his prosecutorial misconduct claim is procedurally defaulted.

Even if this Court were to consider Dixon's argument, the Court would reject it. "To establish a *Brady* violation, a defendant is required to show that: (1) the prosecution suppressed evidence; (2) the evidence was favorable to the defendant; and (3) the evidence was material."

*United States v. Tate*, 633 F.3d 624, 630 (8th Cir. 2011) (quotation omitted). Here, the record shows that the government did not suppress Fossum's grand jury testimony. The government submitted an affidavit from the prosecutor where he swore that he provided the transcript of Fossum's grand jury testimony to the defense on May 27, 2010—several days before trial—and attached to that affidavit is a cover letter dated May 27, 2010, from the prosecutor to defense counsel stating that the grand jury testimony of Fossum was enclosed. The record shows that the government disclosed Fossum's grand jury testimony to defense counsel prior to trial.

### B. Ineffective Assistance of Counsel

In § 2255 motion, a prisoner may raise an ineffective assistance of counsel claim. *See Massaro v. United States*, 538 U.S. 500, 504 (2003). When a court is analyzing such a claim, it "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Johnson v. United States*, 278 F.3d 839, 842 (8th Cir. 2002) (quotation omitted). "To succeed on a claim of ineffective assistance of trial counsel, a defendant must prove 1) his attorney's performance was so deficient as to fall outside the range of reasonable professional assistance, and 2) he suffered such prejudice stemming from the deficient performance there is a reasonable probability the proceeding would have had a different result." *Morelos v. United States*, 2013 WL 978218, at *2, ___ F.3d ___, ___ (8th Cir. 2013). "Failure to establish either prong is fatal to a claim of ineffective assistance." *Id.* "We generally entrust . . . matters of trial strategy to the professional discretion of counsel." *Id.* (quotation omitted).

Dixon argues that his counsel was ineffective in his cross-examination of two witnesses: Fossum and Officer Dean Roth. As for Fossum, Dixon asserts that his counsel was ineffective for failing "to point out that the conflicting testimony that Lt. Michael Fossum gave at the Grand

3

Jury differed materially from the testimony" at the trial. (Dkt. 120 at 7.) In Fossum's grand jury testimony, Fossum testified that Dixon's co-defendant, in a post-arrest interview, said that Dixon had written the demand note used in the bank robbery. During cross-examination at trial, however, Fossum testified that in the post-arrest interview, the co-defendant did not identify by name the person who wrote the demand note. The Court cannot conclude that Dixon's counsel's cross-examination of Fossum was constitutionally deficient. Fossum's grand jury testimony was more incriminating to Dixon than Fossum's testimony at trial, and Dixon's counsel did not fall below the minimum standards of professional competence when he did not focus on the more incriminating grand jury testimony. As for Roth, Dixon also asserts that his counsel was ineffective when he failed to cross-examine Roth about allegedly false testimony at trial. But Dixon's claim that Roth's testimony was false rings hollow. At trial Roth testified that he searched Dixon prior to Dixon's post-arrest interview and found a notebook on Dixon. Dixon asserts that during his post-arrest interview he told his interviewers (Roth was not one of them) that the notebook was on a chair outside the interview room. At trial Roth testified that he concluded that the demand note seemed to come from the notebook, and Dixon asserts that he told his interviewers that the demand note was from the notebook. Roth's testimony is not inconsistent with Dixon's assertions about what he told his interviewers. Consequently, the Court rejects Dixon's claim that his counsel was ineffective in the cross-examination of Roth.

Dixon also argues that his counsel was ineffective by informing him that the handwriting expert, Karen Runyon, was a good friend and worked for the Federal Defender's office. Prior to trial, the government retained Runyon to determine who wrote the demand note. Runyon requested a writing exemplar from Dixon, and Dixon's counsel agreed that Dixon would give the exemplar voluntarily and without a court order. Dixon argues that he was harmed because his

4

counsel failed to inform him that he could refuse to participate in a writing exemplar and because his counsel assisted the government. But Dixon has failed to show prejudice. The government submitted the affidavit of the prosecutor, where the prosecutor asserts that if Dixon had not agreed to provide the exemplar voluntarily, the prosecutor would have sought a court order. A court may require a defendant to provide a handwriting exemplar. *See United States v. McDougal*, 137 F.3d 547, 559 (8th Cir. 1998) ("Requiring a defendant to give a handwriting exemplar . . . do[es] not violate the Fifth Amendment privilege against self-incrimination."). Dixon also has not shown that he was prejudiced when Dixon would have given the exemplar anyway, either voluntarily or under a court order.[2]

Dixon asserts that his counsel was ineffective for not conveying settlement offers to Dixon. But Dixon alleges in his motion that his counsel conveyed to Dixon a settlement offer on May 18, 2010. The government submitted the affidavit of the prosecutor, who swore that he sent Dixon's counsel a proposed plea offer via email on May 19, 2010, and consistent with his practice, he orally conveyed the offer the day before. According to his own statements in his motion, Dixon did receive from his counsel the government's settlement offer.[3]

Finally, Dixon asserts that his counsel's deficient advice caused him to go to trial. Dixon asserts that he, through his counsel, made an initial offer to plead guilty if the government would ask for 120 months' imprisonment. The government rejected Dixon's proposal and instead

---

[2] Dixon also writes that he was prejudiced by "[a] conflict of interest," (Dkt. 120 at 12) but it is unclear what Dixon actually means. If Dixon is arguing that his attorney evidenced a conflict of interest by agreeing to have Dixon provide an exemplar absent a court order, the Court is not persuaded by his argument.

[3] To the extent Dixon also alleges that his counsel never relayed other settlement offers, there is no evidence in the record that the government made more than the one offer on May 18, and it is clear from the record and from Dixon's own motion that Dixon's counsel conveyed that offer to Dixon.

offered to ask for a sentence of 151 months' imprisonment. Dixon asserts that after discussing the offer with his counsel, Dixon "came to the conclusion that counsel showed more interest in having [Dixon] pleading out than trial." (Dkt. 120 at 19.) Dixon claims that his counsel subsequently sent him a letter stating that "[t]rial would end in a sentence counted in decades." (*Id.*) Dixon then asserts that his counsel told him, "[N]o matter if you plea or go to trial this system is going to give all the time they can justify by the law because to them you're only a nigga, so all you can do is roll the dice and maybe you'll win." (*Id.* at 20.) Dixon claims that his counsel's "deficient advice caused [Dixon] to go to trial" and "prejudiced [Dixon] by using race to determine if [Dixon] should go to trial or plea." (*Id.*) In response, the government submitted the affidavit of Dixon's counsel, who swore that Dixon refused to consider any advice about a settlement and denied that the conversation about race occurred.

"When the defendant's claim is that counsel misadvised him of the relative advantages of pleading guilty rather than proceeding to trial, in order to show prejudice, the defendant must show that, but for his counsel's advice, he would have accepted the plea." *Sanders v. United States*, 341 F.3d 720, 722 (8th Cir. 2003) (quotation omitted). "To avoid dismissal, the movant must present some credible, non-conclusory evidence that he would have pled guilty had he been properly advised." *Id.* (quotation omitted). Here, Dixon has not presented the Court with any credible, nonconclusory evidence that he would have pled guilty. On the face of Dixon's motion, it is clear that Dixon's counsel discussed the government's offer with Dixon and communicated with Dixon about going to trial. Dixon asserts that after the government offered to ask for 151 months, Dixon concluded that his *counsel* wanted Dixon to plead; Dixon never states that *he* had concluded that he should plead. His bald assertion that his counsel's advice caused him to go to trial—an assertion that is unsupported by any affidavits or other evidence—is insufficient to

6

show that he would have otherwise pled guilty. *See Moses v. United States*, 175 F.3d 1025, 1025 (8th Cir. 1999) (unpublished table decision) ("Moses offers only his own self-serving statements made in his pro se § 2255 motion and brief that he would have accepted the plea agreement . . . . Moses's conclusory statements alone are not the sort of objective evidence required to establish a reasonable probability that he would have accepted the plea agreement absent his counsel's allegedly deficient performance.").[4]

### C. Certificate of Appealability

An appeal cannot be taken from a final order denying a motion under § 2255 without a certificate of appealability. 28 U.S.C. § 2253(c)(1). A court cannot grant a certificate of appealability unless the applicant has made "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "Where a district court has rejected the constitutional claims on the merits . . . [t]he petitioner must demonstrate that reasonable jurors would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Where a district court rejects claims on procedural grounds, "a [certificate of appealability] should issue where the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of

---

[4]     On January 10, 2013, Dixon asked to file a reply. On January 11, this Court granted Dixon's motion and required that his reply be due by February 1. On February 14, the Court received a letter from Dixon where Dixon stated that he received the Court's January 11 order on January 30, and Dixon requested that his time to file a reply be extended by 60 days. The Court, in its discretion, may determine whether to allow a petitioner to submit a reply brief. *See United States v. Moreno*, Crim. No. 11-178, 2013 WL 1104766, at *1 (D. Minn. Mar. 18, 2103) ("[T]he Government's Response does not give the Defendant an automatic right to reply."); *United States v. Crittenton*, Crim. No. 03-349-2, 2008 WL 343106, at *2 (E.D. Pa. Feb. 7, 2008) ("No court has held that Rule 5(d) [of the Rules Governing Section 2255 Proceedings] entitles a petitioner to submit a reply under all circumstances. When a court does not request, permit, or require the additional argument that would be contained in a reply brief, § 2255 petitioners are not prejudiced by denial of an opportunity to file such a brief."). Dixon sent the Court a lengthy § 2255 motion, and he later supplemented it. After reviewing the materials, the Court concludes that a reply is not necessary and denies Dixon's request for an extension of time to file a reply.

a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id*. Here, Dixon has not made any showing that reasonable jurists would find the rejection of his claims debatable or wrong. Therefore, the Court declines to grant a certificate of appealability.

## III. CONCLUSION

The Court determines that no evidentiary hearing is necessary to assess the § 2255 motion because the motion, files and records of the case conclusively show that Dixon is not entitled to relief. Accordingly, based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1. Dixon's § 2255 motion [Docket No. 120] and supplement [Docket No. 123] are DENIED.
2. Dixon's Motion for Enlargement of Time to File Reply [Docket No. 130] is DENIED.
3. A certificate of appealability is DENIED.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: April 7, 2013

s/Joan N. Ericksen<br>JOAN N. ERICKSEN<br>United States District Judge